UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER D. DORCH,

    Plaintiff,

v.

RITA CRITTENDEN, Assistant Deputy Warden, and MICHAEL A. NOWAK, Acting Resident Unit Manager, sued in their Individual and Official capacities,

    Defendants.
_____/

CIVIL ACTION NO. 09-13936

DISTRICT JUDGE ROBERT H. CLELAND

MAGISTRATE JUDGE MARK A. RANDON

## REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 11)

### I. INTRODUCTION

Plaintiff Christopher Dorch ("Plaintiff"), a Michigan state prisoner, filed this 42 U.S.C. § 1983 action against Assistant Deputy Warden Rita Crittenden ("Crittenden"), and Acting Resident Unit Manager Michael Nowak ("Nowak") (collectively "Defendants"), alleging they retaliated against him for exercising his constitutional rights (Dkt. No. 1). Presently before the Court is Defendants' motion for summary judgment (Dkt. No. 11). Defendants seek dismissal of Plaintiff's complaint on the ground that he failed to properly exhaust his administrative remedies (Dkt. No. 11). Pursuant to 28 U.S.C. § 636(b)(1)(B), the motion has been referred to the undersigned for a Report and Recommendation (Dkt. No. 3) and has been fully briefed. For the

reasons set forth below, the undersigned **RECOMMENDS** that Defendants' motion be **GRANTED**.

## II.  FACTS

*A.     Background*

At all times relevant to this case, Plaintiff has been incarcerated at the Ryan Road Correctional Facility ("RRF") in Detroit, Michigan, the Straits Correctional Facility ("KTF") in Kincheloe, Michigan, or the Chippewa Correctional Facility ("URF") in Kincheloe, Michigan.[1] Plaintiff's complaint chronicles the alleged acts of retaliation he suffered at the hands of Crittenden and Nowak for exercising his First Amendment rights.  Plaintiff's complaint seeks compensatory and punitive damages, along with injunctive relief (Dkt. No. 1).

The salient facts are these: in September 2005, Plaintiff claims to have sent a "Conditional Acceptance For Value For Proof Of Claim" ("CAFV")[2] to a number of MDOC employees and state officials, including the Director of the MDOC (Dkt. No. 1, ¶ 12).  Plaintiff was subsequently contacted by the Michigan Attorney General's Office and advised that if he attempted to register these CAFVs "so as to encumber any property owned" by the recipients, he may be prosecuted because they were not "legal documents in the State of Michigan" (Dkt. No. 1, ¶¶ 13-14).  Plaintiff also alleges that in retaliation for sending the CAFVs, Crittenden conducted a search of his cell and property on February 23, 2006 (Dkt. No. 1, ¶ 18); his typewriter was subjected to searches and seizures; he was terminated from his relatively high-

---

[1]Kincheloe is located in Michigan's upper peninsula, approximately 330 miles from Detroit.

[2] The undersigned is unclear as to the meaning and purpose of this "Conditional Acceptance For Value For Proof of Claim."

paying prison job; and Crittenden warned Plaintiff of drawing negative attention to himself through his conduct and reminded him of the benefit of being housed at RRF, near his family and friends (Dkt. No. 1, ¶¶ 23, 31-33, 36-37).

Undeterred, Plaintiff next claims to have sent a "Petition for Superintendent Control"[3] to the Michigan Supreme Court on June 15, 2007 (Dkt. No. 1, ¶ 42). According to Plaintiff, on June 26, 2007, Nowak responded by preparing a Security Classification Screen to transfer Plaintiff from RRF to KTF (in Kincheloe), which Crittenden approved (Dkt. No. 1, ¶ 43). Shortly thereafter, Plaintiff was transferred to KTF.

Rather than grieve his transfer, Plaintiff served Defendants, via overnight mail, with a "Notice of Claim" complaining of a "retaliatory transfer" in response to his First Amendment expression (Dkt. No. 1, ¶¶ 47-51). Defendants say the Notice of Claim indicated that it was "enforceable" against them through the UCC and that Plaintiff would "seek to enforce obligations against" them if his pending MDOC matters and requested transfer back to RRF were not favorably resolved (Dkt. No. 1, Ex. A). Defendants viewed the Notice of Claim as "threatening" and "harassing." *Id.*

On August 1, 2007, Nowak allegedly faxed a Major Misconduct Report from RRF to URF[4] in response to the "Notice of Claim" Plaintiff served upon him (Dkt. No. 1, ¶ 52). On August 2, 2007, Crittenden faxed an identical Major Misconduct Report from RRF to URF (Dkt. No. 1, ¶ 53). On August 8, 2007, a misconduct hearing was held where Plaintiff was found

---

[3] The undersigned is unclear as to the purpose of this "Petition For Superintendent Control" in the instant case.

[4] In the interim, Plaintiff had been transferred to this facility.

guilty of the charges alleged in both misconduct reports written by Defendants (Dkt. No. 1, ¶¶ 54-55). Plaintiff requested a rehearing on August 21, 2007, which was denied on November 14, 2007 (Dkt. No. 1, Ex. D).

## B.     *The MDOC's Grievance Procedure*

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 11, Ex. B). The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.[5]

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved within two business days of the incident. Section G of the Policy provides that a grievance may be rejected if "the grievance is filed in an untimely manner." Section V of the Policy requires the Step I grievance be filed within five business days after attempting informal resolution with the staff member involved. A prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received.

As it relates to filing a grievance which alleges staff misconduct, the Policy refers to MDOC Policy Directive 01.01.140 "Internal Affairs" ("the IAD Policy") (Dkt. No. 14, Ex. C). The IAD Policy states that:

---

[5] Plaintiff now claims the only acts of retaliation for which he seeks relief are the issuance of Major Misconduct Reports by Defendants faxed on August 1 and 2, 2007. (Dkt. No. 14, p. 4)

> H. All allegations of conduct which fall under the jurisdiction of the Internal Affairs Division shall be referred to the Internal Affairs Division as set forth in this section. This includes allegations made during the course of an investigation by other Department staff and allegations by offenders, whether verbally or in writing, **provided the allegations contain facts rather than mere assertions or rumor**. (Emphasis added).

In addition, section Q of the Policy states, in pertinent part, that "if it is determined that the grievance is not within the jurisdiction of the Internal Affairs Division…the grievance shall continue to be processed as a Step I grievance in accordance with this policy." Further, in outlining what should be included in a grievance, the Policy requires that prisoners adhere to the following procedural rules:

> R. The issues should be stated briefly but concisely. **Information provided is to be limited to the facts** involving the issue being grieved (**i.e., who, what, when, were, why, how**). Dates, times, places, and names of all those involved in the issue being grieved are to be included. (Emphasis added).

### C. *Plaintiff's Grievances*

Plaintiff filed two grievances through Step III of the Policy concerning the allegations in his complaint. On September 6, 2007, Plaintiff filed grievance RRF07090061728E (Dkt. No. 1, Ex. F) against Nowak alleging retaliatory conduct, and RRF07090061628E (Dkt. No. 1, Ex. E) against Crittenden, alleging a conspiracy with Nowak. Although Plaintiff pursued both grievances through Step III, the initial grievances filed at Step I were rejected as untimely. As a result, Plaintiff appealed to Step II on October 24, 2007 arguing that his Step I grievances should not have been rejected, but rather forwarded to the Internal Affairs Department ("IAD") for review. The Step II appeals also alleged that Plaintiff failed to receive notice of the Step I grievance rejections. Plaintiff's Step II appeals were rejected on December 3, 2007 as untimely

and for lack of factual allegations sufficient to warrant a referral to IAD (Dkt. No. 11, Ex. E, F). Plaintiff later appealed to Step III, which was rejected for lack of additional information to negate the first two rejections. *Id.* The Step I grievances list incident dates of August 1, 2007 and August 3, 2007. *Id.* The filing of the grievances on September 6, 2007, more than a month after the alleged incidents, was well beyond the filing dates permitted by the Policy.

## III. ANALYSIS

*A.     Standard of Review*

**1. Fed. R. Civ. P. 56 (c) and 42 U.S.C. § 1997e(a)**

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" *Fed.R.Civ.P. 56(c)*. The moving party bears the burden of proving that no genuine issue of material facts exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n.1 (3d Cir. 1995). If the moving party has demonstrated an absence of material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (quoting *Fed.R.Civ.P. 56(e)*). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party,

however, will not be sufficient to deny a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.  *The Prison Litigation Reform Act*

#### 1.  **The Meaning and Purpose of Proper Exhaustion**

Under the Prisoner Litigation Reform Act ("PLRA"), an inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo,* 548 U.S. 81, 90 (2006) quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting, *Porter*, 534 U.S. at 525. As the *Woodford* Court explained, the benefits of exhaustion are unattainable if prisoners ignore the rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction.

*Woodford*, 548 U.S. at 95. Therefore, an untimely or otherwise improper grievance does not satisfy the PLRA exhaustion requirement.

In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints. However, like the instant motion, failure to exhaust may still be raised as an affirmative defense. In order to advance a procedural default defense, prison officials must first enforce their own procedural requirements by rejecting an improper grievance. *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise defaulted claims on the merits, so as a general rule will we.").

### 2. Plaintiff Failed to Exhaust his Administrative Remedies

While Plaintiff pursued his grievances through Step III, he did not comply with the time requirements outlined in the Policy, because he failed to file his written grievances within five business days. Plaintiff's brief advances three reasons why his tardy grievances should not preclude his lawsuit: (1) the prison's grievance procedure was not available to address Plaintiff's claims; (2) extenuating circumstances excuse the late filing of the grievances; and (3) the prison waived any procedural defect with respect to the untimely grievances. However, none of these reasons have merit.

First, Plaintiff argues that, as it relates to his 2007 grievances, the prison's interpretation of Section F of the Policy (as deduced from the prison's rejection of an "identical" grievance he filed **in 2008**) demonstrates that the procedure is unavailable to address "incidents arising from or related to prison staff's issuance of major misconduct reports." (Dkt. No. 14, pp. 4-6). At issue is the interpretation of Section F, which states, in relevant part:

> F. Grievances that raise the following non-grievable issues also shall be rejected:
> 2. Decisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing).

Plaintiff's lawsuit alleges that the issuance of the misconduct reports, themselves, were retaliatory – not the decision, or anything else that occurred, in the subsequent misconduct hearings (Dkt. No. 1, ¶¶ 70, 71, 81, 96). Thus, Plaintiff's issue was clearly grievable under the plain reading of Section F(2). Further, a single grievance rejected in 2008 (a year **after** the

grievances now at issue) has no bearing on the availability of the grievance procedure to address retaliatory misconduct charges in 2007.[6]

Second, Plaintiff argues that the late filing of his grievances should be excused because, at the time of the major misconduct reports, he had recently transferred from KTF to URF (and was consequently without any property until August 8, 2007); and on August 2, 2007, he was placed in segregation for multiple unrelated misconduct reports (Dkt. No. 14, p. 9). However, August 8, 2007, was the 5th business day following August 1, 2007 and the 3rd business day following August 3, 2007. Therefore, both grievances could have been submitted on time. And, even if Plaintiff was afforded an additional five-day extension, his grievances would still have been filed weeks late. As to his placement in segregation, Plaintiff says nothing about the duration of his stay. Nor does he allege that he was prevented from filing his grievances while in segregation. It does appear, however, that Plaintiff was either out of segregation and/or had stamps and materials necessary to file a grievance by August 8, 2009 (Dkt. No. 14, Ex. F, ¶¶ 9-10, Plaintiff's Affidavit).

Third, Plaintiff argues that even if his grievances were untimely, the prison waived this defect by not referring the issues raised to IAD. This argument also fails. Whether or not the prison was required to refer his grievances to IAD, Plaintiff was nonetheless required to file his grievances on time. Moreover, the IAD Policy clearly states that all allegations of misconduct falling under IAD jurisdiction *must* set forth factual allegations and not "mere assertions or rumor" (Dkt. No. 14, Ex. C). Plaintiff's grievances did not request referral to IAD, and the

---

[6] The 2008 grievance cited by Plaintiff is also factually distinguishable as it dealt with an alleged improper confiscation of his personal property – not the issuance of a retaliatory major misconduct.

undersigned concludes that, even when considered in a light most favorable to Plaintiff, the content of the grievances was indisputably insufficient to conclude that they fell under IAD jurisdiction. Therefore, the matters were properly processed as Step I grievances.

Plaintiff's Step I grievances were filed more than a month after Defendants alleged misconduct. Because Plaintiff and Defendants agree on the filing dates of the Step I grievances, there is no factual dispute. Plaintiff failed to exhaust his administrative remedies. Therefore, Defendants' motion for summary judgment should be granted.

## IV. RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that the motion for summary judgment filed by Defendants (Dkt. No. 11) be GRANTED.

## REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

***Note this especially, at the direction of Judge Cleland:*** any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

                                        S/Mark A. Randon  
                                        MARK A. RANDON  
                                        UNITED STATES MAGISTRATE JUDGE

Dated: July 20, 2010

CERTIFICATE OF SERVICE

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 20, 2010.*

                                        *S/Melody R. Miles*  
                                        *Case Manager to Magistrate Judge Mark A. Randon*